# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 1998-KA-01105-COA

**RODRICK O'NEAL BROOKS**                                                                 **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                                   **APPELLEE**

| | |
|---|---|
| DATE OF TRIAL COURT JUDGMENT: | 05/29/1998 |
| TRIAL JUDGE: | HON. JAMES W. BACKSTROM |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROSS PARKER SIMONS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY DEIRDRE MCCRORY |
| DISTRICT ATTORNEY: | DALE HARKEY |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | GUILT OF ATTEMPTED KIDNAPPING AND ARMED ROBBERY; SENTENCED ON EACH COUNT TO SERVE A TERM OF 6 YEARS IN THE CUSTODY OF THE MODC TO RUN CONCURRENTLY, AND TO PAY ALL COURT COST. |
| DISPOSITION: | AFFIRMED - 04/25/00 |
| MOTION FOR REHEARING FILED: | 5/16/2000; denied 8/8/2000 |
| CERTIORARI FILED: | 8/21/2000; denied 10/12/2000 |
| MANDATE ISSUED: | 11/2/2000 |

EN BANC.

SOUTHWICK, P.J., FOR THE COURT:

¶1. Roderick O'Neal Brooks was convicted by a Jackson County Circuit Court jury of armed robbery and attempted kidnapping. Brooks alleges on appeal that an instruction on aiding and abetting was fatally defective, that his conviction violated double jeopardy principles, and that the evidence was insufficient to support his conviction. We find no error and affirm.

## FACTS

¶2. These are the facts consistent with the verdict. On October 15, 1997, Eric Spitler and John Trussell stopped at a K&P store in Gautier to buy cigarettes. Spitler got out of the car and began walking towards the store. While still outside he was approached by Rodrick Brooks. Brooks tried to persuade him to purchase beer for him, but Spitler refused and went into the store.

¶3. While Spitler was inside the store, Brooks's half-brother, Iyon Safford, got inside the car with Spitler's friend Trussell and asked to purchase marijuana from him. Trussell responded that he did not have any marijuana. Safford then asked him if he needed some. When Trussell responded in the negative, Safford pulled a gun, but Trussell said that he did not have anything valuable. At this point, Safford told Brooks, who had been standing outside, to get in the back seat. Safford then threatened to shoot Trussell unless he drove them wherever they wanted to go. Trussell refused. Brooks hit Trussel with his fist and got out of the car. Safford also hit Trussell and exited.

¶4. Spitler was able to see some of this while still in the store. After the just-described events, Spitler arrived back at the car and asked Safford if there was a problem. Safford said that there was and hit Spitler. After being punched, Spitler was ready to fight and advanced on Safford. Safford pulled up his shirt to show the butt of his gun, and Spitler backed off. At this point Safford and Brooks ran away.

¶5. Both suspects were arrested. Brooks testified that he interrupted an argument between Safford and Trussell, that the only reason he hit Trussell was in response to a racial slur, and the rest of the events just described never occurred. In October 1997, Brooks and Safford were indicted for the crimes of armed robbery and attempted kidnapping. They were convicted after a jury trial, with final judgment on the verdict being entered on May 29, 1998.

## DISCUSSION

### Issue 1: The State's jury instruction on aiding and abetting

¶6. Brooks objected at trial to the State's aiding and abetting instruction, but it was given anyway. The first response by the State on appeal is that the appellate argument that Brooks makes regarding this instruction is different than his trial objection. It is critical that we not be the first court asked to rule on the specific argument. *Ballenger v. State*, 667 So. 2d 1242, 1256 (Miss. 1995). Absent error affecting fundamental rights, the trial judge must have been given an opportunity to consider an issue before that issue is raised here. *Berry v. State*, 728 So. 2d 568, 571 (Miss. 1999).

¶7. What Brooks alleged below is that this instruction erroneously permitted the jury to assume that the crime "had already actually happened, and that's still a question for the jury." Under any fair reading, this means that the jury was not required to find that the crime occurred that he was alleged to have aided and abetted. That was exactly the error in *Berry* that was considered so fundamental that an objection was not even needed. *Id.* Therefore, had Brooks's counsel at trial done no more than did Berry's counsel, we would still have to consider the issue. To the contrary, Brooks's attorney went far beyond what counsel in *Berry* did. The defense counsel need not name for the trial judge the precise supreme court precedent that is controlling so long as an adequate description of the alleged error is made. The prosecutor understood the precise issue. He had available and named the supreme court opinions that were discussed and distinguished in the later supreme court opinion that both parties belabor in this appeal, namely, *Hornburger v. State*, 650 So. 2d 510 (Miss. 1995).

¶8. The challenged instruction for the State, S-3, provided only this:

> The court instructs the jury that each person present at the time and consenting to and encouraging, aiding, or assisting in any material manner in the commission of a crime, or knowingly and willfully doing any act which is an ingredient in the crime, is as much a principal as if he had with his own hands

committed the whole offense.

That is a correct statement of law. Whether it is a valid instruction will be considered momentarily. The next instruction, S-4, explained the elements of the crime:

> The Court instructs the Jury that the Defendant, Rodrick O'Neal Brooks, has been charged with the crime of Armed Robbery.
>
> If you find from the evidence in this case beyond a reasonable doubt that:
>
> (1) The Defendant, Rodrick O'Neal Brooks, alone or in conjunction with another, did wilfully, unlawfully and feloniously attempt to take, steal, and carry from the person and against the will of John Trussell, an undetermined amount of money in United States Currency and jewelry, the personal property of John Trussell;
>
> (2) By putting John Trussell in fear of immediate injury to his person, by the exhibition of a deadly weapon, to-wit: a pistol; and
>
> (3) The event occurred on or about October 15, 1997, in Jackson County, Mississippi; then you shall find the Defendant, Rodrick O'Neal Brooks, guilty of Armed Robbery.
>
> If the State has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the defendant not guilty of Armed Robbery.

¶9. Brooks's specific trial level objections to S-3 were these: (1) it was confusing and misleading, (2) it did not require that the defendant have knowledge of the crime being committed, and (3) the instruction assumed the commission of a crime without requiring the jury to find that the crime had been completed. Brooks does not challenge instruction S-4 but argues that S-3 is so similar to an instruction that was condemned in a recent supreme court precedent that the conviction must be reversed. *Berry v. State*, 728 So. 2d 568, 570-71 (Miss. 1999). In its wording S-3 actually is quite different from the *Berry* instruction. We will analyze whether its effect is different.

¶10. The foundational precedent on this issue is *Hornburger.* That case declared an aiding and abetting instruction to be error because it did not specifically require that the State prove the occurrence of each element of the offense that the defendant was accused of aiding. Instead, the instruction merely required that the defendant be present, encourage the crime, and himself perform one act that is an element of the offense or immediately connected with it. *Hornburger,* 650 So. 2d at 514-515 (instruction S-8). In *Hornburger,* the error was harmless because another instruction supplied the missing direction to the jurors.

¶11. The *Berry* court went beyond *Hornburger.* The court acknowledged that other instructions informed the jury that the State had to prove that the underlying crime had occurred, in addition to believing that Berry had committed at least one element of the crime. *Id.* at 571. The *Berry* majority mentioned the normal rule that all instructions are to be read together in analyzing whether the jury was correctly charged by the trial court. *Id.* However, reversal was still required because the *Berry* abettor instruction "appears to give the jury an additional option of finding the defendant guilty if she committed only one element of the crime without even finding that the crime was ever completed." *Id*. at 571.

¶12. *Berry* is premised on avoiding confusion of the jury. The jury could have believed that Berry was

guilty of aiding and abetting by committing one element of the offense, even though the jury also believed that the crime itself never occurred. To determine whether that kind of inherent confusion is present in this case, we review the specific *Berry* instruction that was found to create an incorrect option for the jury:

> The Court instructs the jury that each person present at the time, and consenting to and encouraging the commission of a crime, and knowingly, willfully and feloniously doing any act which is an element of the crime, or immediately connected with it, or leading to its commission, is a principal.

> One who aids, assists and encourages a transfer of cocaine is a principal and not an accessory, and his guilt in nowise depends upon the guilt or innocence, the conviction or acquittal of any other alleged participant in the crime. Therefore if you believe from the evidence, beyond a reasonable doubt, that Merlinda Berry did willfully, unlawfully and feloniously do any act which is an element of the crime of transfer of cocaine, as defined by the Court's instructions, or immediately connected with it, or leading to its commission, then and in that event, you should find Merlinda Berry guilty of transfer of cocaine as charged in the indictment.

*Id.* at 570.

¶13. The most obvious difference between the two cases is that the total instruction that explained to the jury Brooks's complicity as an aider and abettor was only the first paragraph of a much longer instruction in *Berry.* There is no error in the first paragraph of the *Berry* instruction nor in S-3 given in this case. It was the second paragraph of the *Berry* instruction, a set of explanations that are totally absent in the present case, that created the confusion.

¶14. What confuses can indeed be in the eye of the reader. Still, we reach the no-confusion conclusion here for the following reasons:

> 1) Instructions identical to what was given here and similar to the first paragraph of *Berry* have been found not to be erroneous. *Hoops v. State,* 681 So.2d 521, 533 (Miss. 1996) (instruction was identical to S-3 and did not contain second paragraph similar to *Berry*).

> 2) The defect in aiding and abetting instructions has been in explaining how to apply facts of a specific case to the correct statement of the law. In one precedent, the majority found no defect at all in an instruction in which the first part was similar to S-3, but which then specifically applied the facts to that legal structure. *Carr v. State,* 655 So.2d 824, 833 (Miss. 1995). The dissent disagreed that the instruction was correct:

> The problem that I see is that the second part of the instruction, which attempts to apply the principle of law stated in the first clause to factual findings by the jury, leaves out a finding essential to the application of the principle enunciated. The principle of law is that "each person present at the time, and consenting to and encouraging the commission of crime" who "knowingly, wilfully, and feloniously" does an act which is an element of or connected with the crime or leads to its commission is guilty as a princip[al] actor. In the second part of the instruction here in question, applying the principle of law to facts to be found, left out are the requirements that Carr be "present" and "consenting to" and "encouraging" the crime. It even leaves out the requirement that he "knowingly" perform an act. Because of these omissions I find the instruction fatally flawed.

> *Id*. at 863 (Banks, J., dissenting).

¶15. In our case, there is no "second part" to the instruction. When a correct abstract principle of law is combined with an explanation on applying the abstract principle to the facts of the particular case, that explanation needs to be complete. That is especially true in an instruction such as in *Berry,* in which the detail of the application of the facts to the just-stated law can make the instruction appear to be free-standing, i.e., independent of the force of the other instructions.

¶16. Instructions S-3 and S-4 that the jury relied upon to convict Brooks do not raise the same concerns involved in *Berry*. The only meaningful description of the crime is in S-4. The brief aiding instruction S-3 is nothing like the *Berry* instruction. It has no potential to be viewed as an "alternative means of committing the crime" that might cause the jury *not* to read all instructions together in reaching its verdict.

¶17. If there is a problem with S-3, it arises from being only an abstract statement of the law. However, an aiding and abetting instruction was approved in a recent case despite an argument that it was abstract. *Hooker v. State,* 716 So.2d 1104, 1110 (Miss. 1998). Unless the abstractness of the instruction could mislead the jury, its use is not reversible error. *Id.* In fact, by being abstract and less substantial this instruction in my view avoided being ensnared in the recently identified problems of *Berry.*

¶18. There is no inherent confusion in this instruction and no basis on which to reverse.

### Issue 2: Double jeopardy

¶19. Prior to this trial for armed robbery and attempted kidnapping, Brooks was convicted of simple assault in Gautier Municipal Court. He alleges that being prosecuted in Jackson County Circuit Court on these more serious offenses constituted double jeopardy. He argues that his act of hitting Trussell is the identical act used to support both his conviction of simple assault and the conviction of armed robbery and attempted kidnapping.

¶20. The State's first response is that the issue was not raised below until a post-trial motion. No authority is cited by the State that a person can twice be put in jeopardy for the same offense so long as he does not object until after trial. In fact, though, authority does exist that if a double jeopardy claim is not raised until an appeal of the second conviction, the issue is waived. *Peretz v. United States,* 501 U.S. 923, 936 (1991), citing *United States v. Bascaro,* 742 F.2d 1335, 1365 (11th Cir. 1984), cert. denied sub nom. *Hobson v. United States*, 472 U.S. 1017, 105 S.Ct. 3476, 87 L.Ed.2d 613 (1985). On the other hand, certain allegations of errors affecting fundamental constitutional rights may be excepted from procedural bars that otherwise prohibit their consideration. *Bevill v. State,* 669 So.2d 14, 17 (Miss. 1996) (procedural bars erected by post conviction relief statute inapplicable to violations of due process). The supreme court held that "the procedural bar should be excepted" when a defendant raised a double jeopardy issue for the first time on appeal. *Greenwood v. State,* 744 So.2d 767, 770 (Miss. 1999). The "should be excepted" language may not constitute a holding that the bar always is to be lowered. Even so, we lower the bar here. Being twice in jeopardy for the same offense might easily also constitute plain error.

¶21. Since the point was raised before the trial court, albeit only in a post-trial motion, we consider the issue. We first examine the meaning of "double jeopardy":

> Double jeopardy protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense. *White v. State*, 702 So.2d 107, 109 (Miss.1997). "Where the two offenses for which

the defendant is punished or tried cannot survive the same elements test, the double jeopardy bar applies ....[t]he same elements test, sometimes referred to as the '*Blockburger*' test, inquires whether each offense contains an element not contained in the other; if not, they are the 'same offense' and double jeopardy bars additional punishment and successive prosecution." Id. (quoting *United States v. Dixon*, 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556, (1993)). Even though there may be a substantial overlap in the proof supporting the convictions of the different crimes, the *Blockburger* test is met where each offense requires proof of an element not necessary to the other.

*Greenwood,* 744 So.2d at 770.

¶22. What must not be overlooked, however, is that this is not an exercise in abstraction. Double jeopardy is not proven just because generically all the elements of one criminal code offense are also contained in another. The same conduct of the accused must be used to prove those elements for each offense. This point is at its starkest when an accused commits the same offense against two different people, such as assaulting one person then assaulting another. Those certainly may be charged as two offenses even though the elements of each are identical. It is necessary then to consider each of the charges here and determine whether the same acts by Brooks are being used to prove each, and if so, whether each offense contains at least one element that is not in the other charge. Double jeopardy does not arise merely because much of the same proof is introduced to support the multiple convictions. Some or a substantial overlap of evidence for different crimes that occur at the same time is almost inevitable. *Id.; Bannister v. State,* 731 So.2d 583, 586 (Miss. 1999).

¶23. For the simple assault conviction in municipal court, this had to be proven:

[A] person is guilty of simple assault if he (a) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or (b) negligently causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; or (c) attempts by physical menace to put another in fear of imminent serious bodily harm . . . .

Miss Code Ann. § 97-3-7(2)(b) (Supp.1999).

¶24. For armed robbery, this must be proven:

Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery . . . .

Miss.Code Ann. § 97-3-79 (Rev. 1994).

¶25. As our earlier recitation of the facts indicated, Brooks and his co-indictee Safford had two different encounters with Trussell. One was when Safford displayed a gun and insisted upon the relinquishment of all of Trussell's valuables. That was the armed robbery, for which Brooks was indicted as an aider and abettor. An exhibit that Brooks introduced for the post-trial motion on this issue revealed that the simple assault conviction in municipal court was for hitting Trussell in the head with his fist. A few minutes after the robbery, Brooks hit Trussell because this victim refused to drive the two criminals away. The State could prosecute Brooks for these two different offenses, separated by several minutes even if both occurred in the same vehicle during the same continuing criminal scheme. Aiding and abetting an armed robbery and then

hitting the same victim when he would not assist in the getaway are simply different incidents arising out of the same altercation.

¶26. Moreover, there is case law that the same act can support both an aggravated assault and an attempted armed robbery charge. *Greenwood,* 744 So. 2d at 770. The court found no double jeopardy violation. *Id.* at 771. However, we need not discuss the relationship between simple assault and armed robbery since here separate acts occurred to prove each crime.

¶27. The final charge was for attempted kidnapping, which required this proof:

> Any person who shall without lawful authority forcibly seize and confine any other person, or shall inveigle or kidnap any other person with intent to cause such person to be secretly confined or imprisoned against his or her will . . . .

Miss. Code Ann. § 97-3-53 (Rev. 1994). Proving an attempt requires an overt act towards commission but a failure to complete the offense. Miss. Code Ann. § 97-1-7 (Rev. 1994).

¶28. The simple assault on Trussell was a reaction to the failure of the kidnapping, not a part of it. After the attempt at the point of a gun failed, each frustrated kidnapper then slugged Trussell and immediately got out of the car as opposed to insisting again that Trussell drive them. Those two offenses were therefore distinct. *See also Greenwood,* 744 So.2d at 771 ("Moreover, an overt act toward the commission of one crime can constitute a separate independent crime").

### *Issue 3: Weight and sufficiency of the evidence*

¶29. Brooks asserts that the jury's verdict was against the overwhelming weight of the evidence, or worse, that the State failed to produce sufficient evidence to support the two convictions.

¶30. A new trial should not be ordered because of evidentiary imbalance unless the verdict is so contrary to the overwhelming weight of the evidence that upholding it would be an unconscionable injustice. *Groseclose v. State*, 440 So. 2d 297, 300 (Miss. 1983). The jury is obligated to resolve the conflicts in the testimony and decide the weight of the resulting evidence that they credit. *Gandy v. State*, 373 So. 2d 1042, 1045 (Miss. 1979). We perceive from our review no difficulty arising to injustice of any sort in how that assessment was made here.

¶31. In evaluating the sufficiency of the evidence, the court must consider all the evidence and the reasonable inferences that arise in the light most favorable to the State. *Harrell v. State*, 583 So. 2d 963, 964 (Miss. 1991). Only if reasonable and fair-minded jurors could not find the accused guilty of one or more elements of the offense charged may we reverse and order the accused discharged. *Fisher v. State*, 481 So. 2d 203, 212 (Miss. 1985).

¶32. The eyewitness testimony asserted that Brooks was near the victim during the attempted robbery, climbed into his car with the effect of intimidating him, was prepared to leave with the victim, and delivered the first blow when the kidnapping attempt was frustrated. This fully supported the jury's verdict of guilty on both counts.

¶33. **THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT OF CONVICTIONS OF ARMED ROBBERY AND ATTEMPTED KIDNAPPING AND SENTENCES OF SIX**

**YEARS EACH TO RUN CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.**

**McMILLIN, C.J., LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.**

**BRIDGES, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY KING, P.J., AND IRVING, J.**

BRIDGES, J., DISSENTING:

¶34. With respect to my colleagues in the majority, I would reverse and remand this case to the Circuit Court of Jackson County for a new trial, concluding that the trial court erred when it allowed the jury to consider the aiding and abetting jury instruction offered by the State.

¶35. Brooks's trial counsel vigorously objected to this instruction arguing that it was confusing and misleading. Overruling this timley objection, the trial court gave the State's aiding and abetting instruction. Brooks believes that the instruction allowed the jury to assume that he knew a crime was being committed or was going to be committed that night and that the instruction incorrectly allowed the jury to find him guilty if he did any act at all that furthered the crimes charged. The State's instruction that was given read:

> The court instructs the jury that each person present at the time and consenting to and encouraging, aiding, or assisting in any material manner in the commission of a crime, or knowingly and willfully doing any act which is an ingredient in the crime, is as much a principal as if he had with his own hands committed the whole offense.

The confusing and misleading nature of the instruction and the fact that the instruction assumed the commission of a crime without requiring the jury to find that the crime had been completed lead me to dissent on this issue. Brooks cites *Hornburger v. State*, 650 So. 2d 510 (Miss. 1995) and *Berry v. State*, 728 So. 2d 568 (Miss. 1999) arguing that the instruction permitted the jury to find him guilty without the State proving all elements of the crime charged.

¶36. The majority seems to feel that *Hornburger* and its progeny do not apply to this particular instruction because it is not identical in form to those instructions cited in the aforementioned line of cases. The essential difference between the various instructions cited in *Hornburger, Berry* and the instruction offered at Brooks's trial is obvious. The *Hornburger* instruction consists of two parts; one paragraph with a statement of the law and a second paragraph essentially applying that statement of the law to the particular factual situation. Brooks's instruction differs in that the "legal" paragraph was given sans the "factual" paragraph in the instruction. This, the majority believes, leaves the jury with an abstract instruction along the lines of the one cited with approval in *Hooker*. *Hooker v. State*, 716 So. 2d 1104, 1110 (Miss. 1998).

¶37. I believe that the driving principle behind the *Hornburger* line of cases is to alleviate confusion among the jury when the instructions given can be considered incomplete or easily confused. The supreme court's affirmance of the abstract statement of the law in the jury instructions in *Hooker* was based upon *Pickett v. State,* where the Court held that granting an abstract instruction is not reversible error only when the instruction could not confuse or mislead a jury. *Hooker v. State*, 716 So. 2d at 1110 (citing *Pickett v. State*, 443 So. 2d 796, 800 (Miss. 1983)). I submit that the abstract nature of Brooks's instruction is precisely what leads to the confusion. Without the second paragraph applying the law to the facts at hand,

the jury is left to reconcile conflicting instructions, both containing correct statements of law. Our supreme court has never strayed from the principle that confusing or misleading instructions requires reversal. *Brazile v. State*, 514 So. 2d 325, 326 (Miss. 1987).

¶38. In *Hornburger*, the jury instruction was found to be harmless error when read with other instructions that adequately instructed the jury that the State must prove every element of the crime beyond a reasonable doubt. *Hornburger*, 650 So. 2d at 515. However, the Mississippi Supreme Court held in *Berry* that granting such an instruction constituted reversible error even when read with the instructions as a whole. *Berry*, 728 So. 2d at (¶ 9). The State argues that the additional language in instructions S-4 and S-6 clearly shows that the jury must find Brooks committed every element of the charged offenses. The language reads as follows, "If the State has failed to prove any one or more of the these elements beyond a reasonable doubt, then you shall find the Defendant not guilty." The supreme court recently found in *Lester v. State* that this exact language does not cure the error resulting from the improper instruction. *Lester v. State*, 96-CT-01072-SCT (¶ 9)(Miss. July 1, 1999). The supreme court stated, "[e]ven with the additional language, the fact remains that the instruction was confusing and misleading for the same reasons set forth in *Berry*." *Id*. The circuit court committed plain reversible error when it gave the State's aiding and abetting instruction.

¶39. Therefore, for the above stated reasons, I would reverse and remand this case for a new trial consistent with the dictates of this opinion.

**KING, P.J., AND IRVING, J., JOIN THIS SEPARATE OPINION.**