723 So.2d 1189 (1998)
Derrick BINGHAM, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-00538 COA.
Court of Appeals of Mississippi.
November 24, 1998.
*1190 Lee B. Agnew, Jr., Kate S. Eidt, Jackson, Attorneys for Appellant.
Office of the Attorney General by Jean Smith Vaughan, Attorneys for Appellee.
BEFORE THOMAS, P.J., DIAZ, AND SOUTHWICK, JJ.
THOMAS, P.J., for the Court:
¶ 1. Derrick Bingham appeals his conviction of aggravated assault raising the following issues as error:
I. WHETHER THE COURT ERRED IN PROHIBITING TESTIMONY OF A DEFENSE WITNESS DIRECTLY CONTRADICTING THE TESTIMONY OF THE STATE'S WITNESS CALLING INTO QUESTION THE CREDIBILITY AND VERACITY OF THE STATE'S WITNESS.
II. WHETHER THE COURT ERRED IN ALLOWING HEARSAY TESTIMONY FROM A SHERIFF'S DEPUTY REGARDING CERTAIN OUT OF COURT STATEMENTS THAT THE STATE'S WITNESS SAID TO HIM YET DENYING THE ENTRY OF THIS OFFICER'S REPORT INTO EVIDENCE AS A BUSINESS RECORD EXCEPTION TO THE HEARSAY RULE PURSUANT TO MISSISSIPPI RULES OF EVIDENCE, RULE 803(6).
III. WHETHER THE JURY VERDICT WAS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 2. Finding no reversible error, we affirm.

FACTS
¶ 3. During the mid-day hours on January 26, 1996, a shooting occurred at the intersection of Moncure-Marble Road and Daniels Drive in Terry, Mississippi. At around eleven o'clock in the morning Timothy Wilson and his brother Leonard Wilson were driving in Leonard's '79 Caprice Classic. Timothy was the driver, and Leonard was the passenger. As they approached the intersection of Moncure-Marble Road and Daniels Drive, they spotted Derrick Bingham standing at the end of Daniels Drive with a pistol. The Wilsons testified that Bingham stopped their vehicle, brandished a .357 pistol with an infra-red light, and demanded the return of some money stolen from Bingham's car the previous night. Bingham testified he was acting based on information provided by Willie Alford. Bingham testified that Alford told him that Timothy and Leonard Wilson were the ones who had broken into and stolen $5,000 cash from Bingham's vehicle. At trial the Wilsons denied breaking into Bingham's vehicle and taking any money.
¶ 4. At trial Timothy testified that after Bingham stopped their vehicle, Bingham demanded that they "come up with his money", to which Timothy responded, "What money?" and that Bingham then shot the driver's side front tire. Timothy Wilson drove away while Bingham was reloading his pistol and proceeded to his grandmother's house on Moncure-Marble Road. While the Wilsons were making their escape Bingham's companion, Tim Green, also began to fire upon the Wilsons's vehicle. The Wilsons testified that Green's bullets struck a second tire and the rear windshield of their vehicle.
¶ 5. Bingham and Green got into a Z-24, and began to pursue the fleeing Wilsons down MoncureMarble Road. Green was the driver of the Z-24 and Bingham was the passenger. As Green and Bingham quickly closed in on the Wilsons's vehicle, Bingham leaned out of the passenger window and began firing upon the Wilsons again. As the Wilsons approached to within fifty to a hundred yards of their grandmother's house, Timothy Wilson was shot twice by Bingham. Timothy Wilson was struck once in the ear and once in the neck. Leonard Wilson testified that during the chase, he kept his head down but could see a red laser light flashing across the dashboard during the shooting and that the bullets were concentrated in the driver's area. After Timothy Wilson was shot by Bingham, he eventually lost control of the vehicle after entering his grandmother's driveway. Bingham and Green broke off their chase at this point and fled the scene.
¶ 6. At trial both Bingham and Green testified to their version of the incident. Bingham *1191 testified that he approached Timothy and Leonard Wilson unarmed to inquire as to whether they had broken into his car the previous night and stolen some money. Bingham testified that during his inquiry with the Wilson brothers, Timothy Wilson produced a gun and began firing at him. Bingham testified that he ran to his car to retrieve a gun in self-defense and returned fire as Timothy Wilson continued to fire while speeding away. Bingham further testified that neither he nor Green pursued the Wilsons. Green corroborated Bingham's version and further testified he did not have a weapon nor did he fire upon the Wilsons.

I.

WHETHER THE COURT ERRED IN PROHIBITING TESTIMONY OF A DEFENSE WITNESS DIRECTLY CONTRADICTING THE TESTIMONY OF THE STATE'S WITNESS CALLING INTO QUESTION THE CREDIBILITY AND VERACITY OF THE STATE'S WITNESS.
¶ 7. Bingham contends the trial court erred in not permitting him to effectively question Willie Arthur regarding an alleged break-in and theft of money from Bingham's car by the Wilson brothers the night prior to the shooting. Bingham maintains that Arthur's testimony was necessary to attack the truth and veracity of Timothy and Leonard Wilson's testimony. Had Arthur's testimony been allowed, he would have testified that he and the Wilson brothers were the ones who had broken into and stole money from Bingham's vehicle the night prior to the shooting. Bingham maintains Arthur's testimony was necessary to attack Timothy Wilson's testimony, in which he denied any such break-in or theft on his part. We note at the outset that Bingham himself testified that Arthur told him that both he and the Wilson brothers were the ones who broke into Bingham's vehicle and stole the money.
¶ 8. In support of his argument Bingham cites to M.R.E. 608(b) and Miskelley v. State, 480 So.2d 1104 (Miss.1985). Bingham argues that under Miskelley any evidence which is material and relevant and effects the credibility of a witness is admissible. Id. He further argues that where there is doubt as to the relevancy of the examination the court should always weigh in favor of admitting the testimony. Id. We are not persuaded that the testimony offered by Arthur meets the criteria discussed in Miskelley or is acceptable under M.R.E. 608(b).
¶ 9. Whether Timothy Wilson in fact did break into and steal money from Bingham's vehicle the night prior to the shooting is an irrelevant collateral inquiry, not a substantive, probative fact relevant to the real issue involved, which was the guilt or innocence of Bingham. The inquiry is irrelevant to the issue of whether Bingham committed an aggravated assault against Timothy Wilson and would tend neither to prove nor disprove any material issue at hand and would not be a proper subject for contradiction. M.R.E. 401, 608(b). In addition, we remain mindful of the principle that the use collateral matters are not proper means of impeachment. Miskelley, 480 So.2d at 1108. Finally, it is well settled that the relevancy and admissibility of evidence are within the trial court's discretion and reversal may be had only where that discretion has been abused. Stromas v. State, 618 So.2d 116, 119 (Miss.1993); M.R.E. 103(a), 401. We find no error in denying the testimony of Arthur that Timothy Wilson participated in the break-in and theft of money from Bingham's vehicle. This argument is without merit.

II.

WHETHER THE COURT ERRED IN ALLOWING HEARSAY TESTIMONY FROM A SHERIFF'S DEPUTY REGARDING CERTAIN OUT OF COURT STATEMENTS THAT THE STATE'S WITNESS SAID TO HIM YET DENYING THE ENTRY OF THIS OFFICER'S REPORT INTO EVIDENCE AS A BUSINESS RECORD EXCEPTION TO THE HEARSAY RULE PURSUANT TO MISSISSIPPI RULES OF EVIDENCE, RULE 803(6).
¶ 10. Bingham assigns as error rulings by the trial court admitting testimony concerning a statement contained within a police *1192 report, yet denying the admission of the full report. During the direct examination of Hinds County Deputy Kevin May, May was asked what name Timothy Wilson gave as the person who had shot him. Bingham objected to this testimony as hearsay and was overruled by the trial court.
¶ 11. May was unable to recall the exact name provided by Timothy Wilson and was allowed to refer to his investigation report to refresh his recollection. Despite the fact that May's report was used for the sole purpose of refreshing his recollection regarding the name of the person whom Timothy Wilson provided as the person who had shot him, that testimony was hearsay and inadmissible. However, we note that both Timothy and Leonard Wilson testified that it was Bingham who shot Timothy. Therefore, the admission of the statement made by Timothy to Deputy May concerning who had shot him was harmless error.
¶ 12. For the same reason Bingham objected to the admission of Timothy's statement to Deputy May concerning the identity of his aggressor, the contents of other statements contained within the investigation report are likewise inadmissible as hearsay. At the close of Bingham's case-in-chief, Bingham argued to the trial court to have May's report in full entered into evidence for the jury's consideration. After lengthy argument by Bingham for the report's admissibility under Rule 803(6), the trial court denied the report's admission.
¶ 13. As previously discussed we will not reverse the lower court's ruling on the relevancy and admissibility of evidence absent an abuse of discretion. Stromas, 618 So.2d at 119. Bingham contends that the investigation report prepared by Deputy May falls under Rule 803(6) as an exception to the hearsay rule and is therefore admissible. Bingham relies on Copeland v. City of Jackson, 548 So.2d 970 (Miss.1989) in support of his contention. We are not persuaded by this argument.
¶ 14. Bingham is correct in relying on Copeland as authority for determining the admissibility of police reports into evidence. However, Bingham's cite to the Copeland language as submitted in his brief to this Court is in need of further reading. The Copeland court went on to state that:
In holding such report admissible we should not be understood as holding all the contents of the report were necessarily admissible. For example, there may be notations in such a report which are recitations of statements of others, and would be inadmissible even though the officer were present in court testifying. The report is simply a substitute for the officer appearing in person and testifying.
Copeland, 548 So.2d at 975-976. Statements and information contained within the report that are factual in nature would be admissible and qualify as information routinely obtained in the regular course of business under Rule 803(6). However, the very nature of police investigation reports also requires the taking of statements from parties, witnesses, and bystanders, statements which lack the safeguards outlined within the definition of hearsay and non-hearsay under Rule 801.
¶ 15. It is readily apparent from the record that Bingham sought to introduce Deputy May's report for the sole purpose of using hearsay statements contained therein to contradict testimony provided at trial. The admission of the report for this purpose is clearly improper under our rules on hearsay evidence and was therefore properly excluded by the trial court. There is no merit in this assignment of error.

III.

WHETHER THE JURY VERDICT WAS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 16. Bingham challenges the jury verdict as contrary to the overwhelming weight of the evidence. Bingham argues that the evidence presented at trial was insufficient to support a guilty verdict and as such should be reversed. This case involved a classic jury question. When the weight of the evidence is challenged we will not retry the facts but must take the view of the evidence most favorable to the State and must assume that the fact-finder believed the State's witnesses and disbelieved any contradictory evidence. McClain v. State, 625 *1193 So.2d 774, 778 (Miss.1993); Griffin v. State, 607 So.2d 1197, 1201 (Miss.1992). On review, we accept as true all evidence favorable to the State, and the State is given "the benefit of all favorable inferences that may reasonably be drawn from the evidence." Griffin, 607 So.2d at 1201 (citations omitted). We will reverse such aruling only where "reasonable and fairminded jurors could only find the accused not guilty." McClain, 625 So.2d at 778 (citing Wetz v. State, 503 So.2d 803, 808 (Miss.1987); Harveston v. State, 493 So.2d 365, 370 (Miss.1986)).
¶ 17. We have considered all of Bingham's arguments and citations, commented here as needed, and find further discussion unnecessary. This assignment of error is without merit.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF AGGRAVATED ASSAULT WITH WEAPON AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FIVE YEARS SUSPENDED AND FIFTEEN YEARS TO SERVE IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES, C.J., McMILLIN, P.J., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.